UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOSES KIRSCHKE,

      Plaintiff,

v.                         Case No. 20-11118
                             Honorable Victoria A. Roberts

SCOTT SCHOOLEY, ET Al.,

      Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT IN PART AND DENYING IT IN PART [ECF 25];
ORDER DENYING DEFENDANT KENNEDY'S MOTION FOR
SUMMARY JUDGMENT [ECF 31]**

## I. Introduction

Moses Kirschke ("Kirschke") filed a civil rights action against Defendants – Michigan Department of Corrections (MDOC) officials – alleging official misconduct and retaliation against him. He says they denied him envelopes and use of a typewriter for sending mail, unfairly restricted his law library access, threatened him, transferred him to another facility in retaliation for filing grievances, and failed to investigate and act upon his grievances and complaints.

Defendants filed a motion for partial summary judgment based on exhaustion.

The Court **GRANTS** Defendants' motion in part and **DENIES** it in part.

Defendant Kennedy filed a separate motion for summary judgment, also based on exhaustion.

The Court **DENIES** Defendant Kennedy's motion.

## II. Background

When Kirschke filed this action against six defendants – Scott Schooley, Alan Greason, Karen Kennedy, Brian Rousseau, Anthony Valone, and Natalie Farnsworth – he was incarcerated at the Lakeland Correctional Facility (LCF) in Coldwater, Michigan.  He alleges misconduct that occurred while he was in custody at Thumb Correctional Facility (TCF) in Lapeer, Michigan.

Kirschke filed nine claims against the Defendants:

1.  August 19, 2016: Defendant Valone ("Valone"), TCF's law librarian, refused to approve Kirschke's request for more envelopes    . [ECF No. 1 ¶ 38].  Claim 1.

2

2. August 19, 2016: Defendant Rousseau ("Rousseau") refused to approve Kirschke's request for more envelopes. [ECF No. 1 ¶ 39]. Claim 2.

3. August 22, 2016: Valone threatened to have Kirschke transferred to another prison facility if he asked for envelopes again. [ECF No. 1 ¶ 46]. Claim 3.

4. October 31, 2016: Valone told Kirschke that he cannot use the law library typewriter. Valone subsequently removed the typewriter from the library and put it in his office. [ECF No. 1 ¶ 75]. Claim 4.

5. October 31, 2016: Kirschke sent Defendant Schooley ("Schooley") a kite about Valone's conduct with respect to the typewriter. Schooley returned a kite to Kirschke on November 7, 2016, condoning Valone's conduct. [ECF No. 1 ¶ 96]. Claim 5.

6. November 2, 2016: Valone pulled the typewriter out of his office and allowed a white inmate to use it. [ECF No. 1 ¶ 87]. Claim 6.

7. In retaliation for talking to Schooley, Valone reduced Kirschke's library time to four hours per week for the month of November 2016. [ECF No. 1 ¶ 99]. Claim 7.

3

8. Kirschke told Schooley about the reduction in library hours, but Schooley condoned the reduction.  Claim 8.

9. December 29, 2016: Defendants Schooley, Greason, Rousseau, Valone, Farnsworth ("Farnsworth"), and  Kennedy ("Kennedy") transferred Kirschke to another prison facility – LCF – in retaliation for his grievances.  [ECF No. 1 ¶ 135-140].  Claim 9.

Defendants filed two summary judgment motions.

In the first motion, all Defendants, except Kennedy, move to dismiss claims 1-8 for failure to exhaust.  They concede that Kirschke exhausted claim 9.

In the second motion, Kennedy moves to dismiss claim 9, the sole claim against her, for failure to exhaust.  In Kirschke's grievance for claim 9, he included the names of all Defendants except for Kennedy.  For this reason, Kennedy says he failed to exhaust this claim.

### III. Legal Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The movant bears the initial burden to inform the Court of the basis

4

for his motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies this burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id*. at 324.  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Unsupported, conclusory statements are insufficient to establish a factual dispute to defeat summary judgment, as is the mere existence of a scintilla of evidence in support of the non-movant's position; the evidence must be such that a reasonable jury could find in its favor. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court "views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court only needs to consider the cited materials, but it may consider other evidence in the record. Fed. R. Civ. P. 56(c)(3).  The Court's function at the summary judgment stage "is not to weigh the evidence and determine

the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

## IV. Analysis

Under the Prison Litigation Reform Act ("PLRA"), a prisoner cannot bring an action challenging prison conditions unless he exhausts administrative remedies. 42 USC § 1997e(a). "This requirement is not jurisdictional; rather, exhaustion is an affirmative defense that must be pleaded and proved by the defendants." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought into court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).  Generally, inmates must exhaust through their prison's comprehensive grievance process.  The prison's process determines when and if a prisoner has properly exhausted his claim. *Id*. at 218.

In Michigan, the MDOC Policy Directive 03.02.130 sets forth the grievance process prisoners need to follow to seek redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement.  There are various steps in the process.

6

Before submitting a written grievance, the grievant must attempt to resolve any issue with the staff member involved within two business days of becoming aware of the grievable issue.  If the issues are not resolved within five business days, the inmate may file a Step I grievance.

If the inmate is dissatisfied with the disposition of the grievance decision, or does not receive a response within ten business days after the due date, he may file a Step II grievance.  Finally, the grievant may file a Step III grievance if he is dissatisfied with the Step II result.  The grievance process is exhausted once the final response is issued in Step III.

## A. Grievances

Kirschke was an inmate at TCF from June 2016 to December 2016. During this time period, he filed 22 grievances.  [ECF No. 25; PageID. 842]. 15 of those grievances were against healthcare staff; 5 related to the garnishment of wages; and 2 related to the named Defendants.

It is undisputed that Kirschke exhausted the two grievances involving the named Defendants.

He exhausted claim 9 – grievance TCF-17-01-0009-24z – alleging that Schooley, Greason, Rousseau, Valone, and Farnsworth transferred him to another facility in retaliation for his grievances.

7

He also exhausted a grievance – TCF-16-12-0620-17b – alleging hostile treatment by Valone.  In this lawsuit, Kirschke does not include "hostile treatment" as an individual claim.  Instead, he sets forth five specific instances of alleged misconduct by Valone.

Kirschke concedes that he did not file grievances for claims 1, 2, 3, 4, 5, 6, 7, and 8; he claims Defendants intimidated or misled him into not filing grievances.  Defendants move to dismiss these claims for failure to exhaust.

### i.    Defendant Rousseau – Claim 2

Kirschke claims that Rousseau, a Resident Unit Supervisor at TCF, engaged in official misconduct when he refused to sign an authorization for Kirschke to receive additional envelopes to send outgoing mail.  It is undisputed that Kirschke failed to file a grievance for this alleged misconduct as is required pursuant to MDOC policy 03.02.130(S).

"We have clearly held that an inmate does not exhaust available administrative remedies when the inmate entirely fails to invoke the prison's grievance procedure." *Napier v. Laure County, Ky.*, 636 F.3d 218, 225 (6th Cir. 2011) (quoting *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2013)). The inquiry would generally end here.  However, Kirschke claims the grievance process was unavailable to him.

8

During a conversation with Greason about envelopes, Kirschke told him that "he wasn't trying to write a grievance [against Rousseau and Valone for their alleged misconduct] – that's why he was speaking with him." [ECF No.1 ¶ 52]. Kirschke claims that Greason responded by saying "there's no need to write a grievance…I've heard the situation and now you…don't worry about it…it'll be taken care of." [*Id.*]. Kirschke says Greason's statements misled him to believe that he did not need to file a grievance against Rousseau.

The Supreme Court held in *Ross v. Blake* that a grievance process is unavailable in three circumstances. First, when "it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross v. Blake,* 578 U.S. 632, 643, 136 S.Ct. 1850, 1859, 195 L.Ed.2d 117 (2016). Second, the process is unavailable when the process is so opaque that it becomes incapable of use. *Id*. at 644, meaning, "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. Third, the process is unavailable "when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation." *Id*. see also *Williams v. Correction Officer Priatno*, 829 F.3d 118, 123-24 (6th Cir. 2016).

The third circumstance is most applicable here.  Although Kirschke claims that Greason misled him, there is no evidence to support this claim. Kirschke told Greason that he did not intend to file a grievance.  He could not have been thwarted from a process that he did not intend to participate in.

Moreover, Greason did not mislead Kirschke about the existence or the rules of the grievance process.  Kirschke filed numerous grievances during his incarceration and exhausted a number of them.  It would follow that he knows the process enough that Greason's statements did not trick or mislead him about what was required to properly exhaust his claim.  *See e.g., Davis v. Hernandez*, 798 F.3d 290, 295 (5th Cir. 2015) ("Grievance procedures are unavailable … if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process");  *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013) ("[I]f prison officials misled [a prisoner] into thinking that … he had done all he needed to initiate the grievance process," then "[a]n administrative remedy is not available").

The Court finds that the grievance process was indeed available to Kirschke, that he expressed an intention not to use it, and that he failed to

10

exhaust.   The Court **GRANTS** Defendants' motion for summary judgment on claim 2.

### ii.     Defendant Schooley – Claims 5 and 8

Kirschke claims that he told Schooley, Deputy Warden of TCF, that Valone removed the typewriter from the library (claim 5) and reduced his library hours (claim 8) – but Schooley condoned the conduct.  [ECF No. 1 ¶ 96 and ¶ 129 ].   Kirschke never filed a grievance against Schooley for allegedly condoning Valone's misconduct.

Kirschke says he did not file a grievance against Schooley because Valone threatened to have him transferred to a facility up north if he complained about the envelopes again.   "Plaintiff wanted to file a grievance, but seeing how Schooley covered for Valone, and knowing Schooley's position as a Deputy Warden, Plaintiff believed that if he did, that he would be on the next transfer out of the facility."  [ECF No. 1; PageID. 22-23 ¶ 98].

To successfully show that an administrator thwarted an inmate from engaging in the grievance process through intimidation, the plaintiff's claims of intimidation must be specific.  *Himmelreich v. Federal Bureau of Prisons*, 766 F.3d 576, 578 (6th Cir. 2014).

Kirschke has presented no evidence to show that Schooley threatened or intimidated him. Rather, he relies solely on threats Valone made. He believed that he would be transferred merely because of Schooley and Valone's relationship and Schooley's position at the prison. These assumptions are not evidence that Schooley intimidated him.

The prison's grievance process was available to Kirschke for his claim against Schooley and he should have filed a grievance for each claim to exhaust. He did not do that. The Court **GRANTS** summary judgment on claims 5 and 8.

### iii. Defendant Valone – Claims 1, 3, 4, 6, and 7

Kirschke brings five separate claims against Defendant Valone.

### a. Claim 1

Similar to claim 2 against Rousseau, Kirschke alleges that on August 19, 2019, he requested Valone's approval for the disbursement of additional envelopes to send outgoing mail. Valone refused to authorize the disbursement. [ECF No. 1 ¶ 38].

Kirschke concedes that he did not file a grievance against Valone for this alleged misconduct. He says he did not file a grievance because Greason misled him to believe that he did not need to file one. [ECF No. 36;

PageID. 2].  Kirschke's response brief does not say that he failed to file a grievance for any other reason.

For the reasons mentioned in claim 2, Greason did not mislead Kirschke to not file a grievance.  The grievance process was available to Kirschke and he failed to exhaust it.

The Court **GRANTS** Defendants' motion for summary judgment on claim 1.

### b. Claim 3

Kirschke claims that after Valone refused to authorize the disbursement of envelopes, he went to Valone's office on August 22, 2016 to discuss the envelope issue.  Kirschke claims that Valone said "he wasn't going to sign sh*t …; that by policy he didn't have to give plaintiff nothing …; that down here … they followed the policy to the T …; that plaintiff could be accommodated with the envelopes by being sent back up north if he liked …; that if that was not plaintiffs cup of tea … he'd heard that MR's (Michigan Reformatory) was nice too … and that if plaintiff asked again about the envelopes, that he would go to Defendant Greason and Defendant Schooley about it."  [ECF No. 1 ¶ 46].

Kirschke did not file a grievance against Valone for making threatening statements; he was fearful that Valone would follow-through on his threats and have Kirschke transferred to a facility up north.  [ECF No. 36; Page ID. 3].

In assessing whether the grievance process was available to Kirschke, the Court must determine whether Valone's threats would "deter a person of ordinary firmness from continuing with the grievance process." *Himmelreich,* 766 F.3d at 577 (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 396 (6th Cir. 1999)).

In *Himmelreich*, an inmate alleged that a prison official told him that if he continued filing grievances, he would be transferred to another facility. After accepting the inmate's allegations as true, the Sixth Circuit concluded that "a reasonable jury could conclude that Captain Fitzgerald's actions and statements would deter a person of ordinary firmness from continuing with the grievance process."  *Id.* at 578.  The Court held that a genuine issue of material fact existed as to whether the prison official thwarted the inmate from the grievance process.  *Id.*

Kirschke was an inmate for 6 ½ years at Newberry Correctional Facility (NCF) before MDOC transferred him to TCF.  NCF was "several hours away"

from his family.  [ECF No. 1 ¶ 17].   He claims that his family did not visit him because the prison was so far away.  He was eventually transferred to TCF, which was closer to his family.  Because of the proximity, his family was able to visit him and see him for the first time in years.  [ECF No. 1 ¶ 25].

Within two months of his stay at TCF, Kirschke alleges that Valone made the threatening statements.   The Court must accept Kirschke's allegations as true.  *Himmelreich*, 766 F.3d at 578; *see also Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011) ("[w]hen ruling on a motion for summary judgment, a court must consider the evidence in the light most favorable to the party opposing the motion").   Accepting these allegations as true, a reasonable juror could conclude that Valone's statements deterred Kirschke from continuing with the grievance process for this claim and all subsequent claims against Valone (4, 6, and 7).

Importantly, Kirschke did ultimately file a grievance against Valone on November 29, 2016, alleging that he was subjected to hostile treatment. MDOC denied Kirschke's grievance at Step I and that decision was affirmed through Step III.  He properly exhausted the claim.

Defendants argue this exhaustion did not serve to satisfy Kirschke's duty to exhaust all claims against Valone because the Step I response

explicitly stated that the envelope and typewriter issues were not being considered in the grievance and Kirschke did not object.   [ECF No. 25; PageID. 855-857].

This may be so, but for the mentioned reasons, there is a genuine dispute of material fact as to whether the grievance process was available for all the claims after Valone made threatening statements on August 22, 2016.

The Court **DENIES** Defendants' motion for summary judgment on claims 3, 4, 6, and 7 against Valone.

### B. Defendant Kennedy's Motion for Summary Judgment

On November 24, 2021, Kennedy filed a motion for summary judgment based on exhaustion.

The question is quite simple: may an inmate include a defendant in a suit who was not identified in the inmate's grievance?  Defendants do not address this question in their briefing.  Instead, they say Kirschke could have filed a grievance against Kennedy notwithstanding his late discovery of Kennedy's involvement.  Defendants' argument is misplaced.

By way of background, Kirschke alleges that on December 29, 2016, he was transferred from TCF to another facility in retaliation for his

grievances.  [ECF 25; PageID. 898].  Once he arrived at his new facility, he filed a grievance on January 9, 2017 against Schooley, Greason, Rousseau, Valone, and Farnsworth for the alleged retaliatory transfer.  He did not include Kennedy, a Resident Unit Manager at TCF, as an involved party at the time he filed the grievance.  Kirschke properly exhausted this grievance. [ECF No. 25-3; PageID. 894].

Kennedy argues that she was not listed as an involved party in the grievance, so Kirschke did not properly exhaust his claim against her.  In his response brief, Kirschke says he did not include Kennedy because he did not become aware of her involvement in the transfer until he received his security classification screen in June of 2017.  [ECF No. 36; PageID. 1].  He says, "the names that Plaintiff had at the time, when he filed TCF-0009 [retaliatory transfer grievance] were all that he had."  [*Id*.].  For these reasons, Kirschke contends that Kennedy should not be dismissed .

In support of his argument, Kirschke relies on *Holloway v. McLaren*, No. 16-2508, 2017 WL 5202036 (6th Cir. 2017).

In *Holloway*, the inmate plaintiff filed a grievance against one prison official.  The plaintiff exhausted that grievance through Step III but did not identify any other officials during the process.  The plaintiff brought a lawsuit

against MDOC defendants who were not named in the grievance.  The defendants argued that because he did not identify the defendants in the grievance, he failed to exhaust administrative remedies against them.  The Sixth Circuit disagreed.  The Court held "[b]ecause MDOC officials addressed the merits of the [Plaintiff's] grievance at each step and did not enforce any procedural requirements, [Plaintiff's] failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Holloway v. McLaren*, 2016 U.S. App. LEXIS 14644, at *5  (6th Cir. 2016).

The Supreme Court held in *Jones v. Bock* "that exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances."  *Jones*, 549 U.S. at 219.  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Id*. at 205.  MDOC policy requires that grievances include "[d]ates, times, places, and names of all those involved in the issue being grieved."  MDOC Policy Directive 03.02.130(S).

18

This district held that if a grievance sufficiently provides notice of the issue(s) and gives the prison administration a fair opportunity to address the problem, the grievance is adequate. *Johannes v. Washington*, No. 14-11691, 2016 WL 1253266, at *9 (E.D. Mich. Mar. 31, 2016); *see also Cary v. Washington*, No. 17-13217, 2018 WL 5117812, at *4, *report and recommendation adopted*, 2018 WL 4501480 (E.D. Mich. Sep. 20, 2018); *Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004)).

Although Kirschke's grievance did not include Kennedy's name, it put prison administration on notice and gave all a fair opportunity to address the alleged retaliatory transfer. There will always be instances where an inmate wants to file a grievance and may not know all of the involved parties until a later date. Inmates are under a strict timeline – 10 days – to file a grievance. It will be difficult for inmates to identify every single person in grievances involving numerous prison officials and large-scale conspiracies within 10-days. Inmates are not foreclosed from relief simply because they failed to include one official while attempting to comply with strict deadlines given the resources at their disposal. Also, if Kirschke was to file another grievance after he became aware of Kennedy's involvement, as Defendants suggest he should have done, the grievance coordinator would have most likely

19

denied it based on the same findings from the initial grievance. Kirschke's grievance against the named Defendants included all the information needed for the coordinator to assess the merit of the alleged retaliatory transfer.

The Court dismisses Kennedy's summary judgment motion because Kirschke properly exhausted his grievance through Step III. Although Kennedy was not named in the grievance, she and administrators had sufficient notice of Kirschke's allegations.

## V. Conclusion

Kirschke's complaint contains nine claims. Defendants filed one motion for partial summary judgment seeking dismissal of eight of them for failure to exhaust: 1, 2, 3, 4, 5, 6, 7, and 8. Defendants concede that Kirschke exhausted claim 9.

On claims 1, 2, and 5, Kirschke was required to seek relief through the grievance process. He failed to do that.

The Court **GRANTS** summary judgment on claims 1, 2, and 5.

The grievance process was unavailable to Kirschke on claims 3, 4, 6, and 7 because a reasonable jury could conclude that Valone threatened to

have Kirschke transferred to another prison facility and thwarted Kirschke from engaging in the grievance process.

The case will move forward on the following claims against Valone, all of which present genuine issues of material fact:

3 – August 22, 2016: Valone threatened to have Kirschke transferred to another prison facility if he asked for envelopes again.

4 – October 31, 2016: Valone told Kirschke that he cannot use the law library's typewriter.  Valone removed the typewriter from the library and put it in his office.

6 – November 2, 2016: Valone pulled the typewriter out of his office and allowed a white inmate to use it.

7 – In retaliation for talking to Schooley, Valone reduced Kirschke's library time to four hours per week during the month of November 2016.

The Court **DENIES** in part Defendants' motion for partial summary judgment on claims 3, 4, 6, and 7.  Defendants must file an answer to the remaining claims by June 30, 2022.

Defendant Kennedy filed a motion for summary judgment seeking dismissal of one of the nine claims: 9.  Kirschke properly exhausted his grievance for claim 9.  Although Kennedy's name was not on the grievance,

21

it sufficiently provided administrators with notice of the issues and a fair opportunity to address the problem.

The Court **DENIES** Defendant Kennedy's motion for summary judgment.

**IT IS ORDERED.**

                                                  s/ Victoria A. Roberts
                                                  Victoria A. Roberts
                                                  United States District Judge

Dated:  June 16, 2022